UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

RICHARD D. WROLEN,

      Petitioner,

   v.                                      Case No. 09-cv-51-JPG

UNITED STATES OF AMERICA,

      Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Richard Wrolen's (hereinafter "Wrolen") Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) pursuant to 28 U.S.C. § 2255 and Memorandum (Docs. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6) in support thereof.  Following threshold review by this Court, (*see* Doc. 3), the Government filed a Response (Doc. 17) to the instant motion, to which Wrolen did not submit a reply.

For the following reasons, the Court **DENIES** the instant motion.

## BACKGROUND

On April 5, 2006, Wrolen was indicted for one count of conspiracy to manufacture, distribute, and possess with intent to distribute more than 50 grams of methamphetamine and more than 500 grams of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  The Government subsequently filed an information to establish prior conviction pursuant to 21 U.S.C. § 851.

On November 8, 2006, a superseding indictment was returned against Wrolen that added and dropped several individuals to the overall, alleged conspiracy.  Three days before his scheduled jury trial, Wrolen entered an open plea of guilty to the only count of the superseding indictment.  At the change of plea hearing, Timothy Capps (hereinafter "Capps") represented

Wrolen. While Wrolen awaited sentencing, the Court honored Capps' request to withdraw from representation. The Court terminated Capps as defense counsel of record on the same date it appointed Steven Stenger (hereinafter "Stenger") to Wrolen's case. Stenger would represent Wrolen at sentencing and throughout his appeal to the Seventh Circuit Court of Appeals.

The Court held sentencing on February 29, 2008. At that time, the Court determined that, for purposes of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), Wrolen's total offense level was 38 and his criminal history category was II, which rendered an advisory guideline range of 240-293 months imprisonment. However, the aforementioned § 851 information, to which Wrolen unsuccessfully objected, brought with it a twenty-year mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(A)(viii). The Court ultimately sentenced Wrolen to 252 months imprisonment and 10 years supervised release with a $200 fine and $100 special assessment.

In appealing the Court's judgment, Wrolen challenged the constitutionality of his sentence, arguing that it was "was based on facts not alleged in the indictment or proven to a jury beyond a reasonable doubt." *United States v. Wrolen*, Case No. 06-cr-40019-JPG (Doc. 761, p. 3) (S.D. Ill. July 30, 2008). Acknowleging the viability of *Almendarez-Torres v. United States*, 523 U.S. 224, 227 (1998), wherein the United States Supreme Court held that prior convictions need not be charged in an indictment or proven beyond a reasonable doubt to a jury, the Seventh Circuit summarily rejected Wrolen's arguments and affirmed the Court's judgment. Wrolen never sought a writ of certiorari from the Supreme Court; rather he timely filed the instant motion on January 15, 2009.

## ANALYSIS

As a preliminary matter, the Court notes its concurrence with the Government's assessment of Wrolen's motion and memorandum, namely that they are "lengthy and tedious." (Doc. 8, p. 37). Wrolen spends 66 pages arguing much of what could have been condensed into less than 15 pages. His three primary arguments are as follows:

    1) He unknowingly and involuntarily entered into a guilty plea;

    2) His sentence violated applicable law and the U.S.S.G., and;

    3) He suffered from ineffective assistance of counsel.

(*See* Doc. 1-6, p. 3). Given Wrolen's lack of brevity and, consequentially, clarity, it is difficult to discern which of Wrolen's numerous sub-arguments support his main arguments; nevertheless, the Court has done its best to structure this memorandum and order in a logical fashion. With that said, each of Wrolen's central contentions will be addressed in kind.

**I.    Section 2255 Generally**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255 (2006). However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). More precisely, "[r]elief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted).

Of course, a § 2255 motion does not substitute for a direct appeal. A defendant cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to

consider the claim would result in a fundamental miscarriage of justice.[1] *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt*, 83 F.3d at 816. The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro vs. United States*, 538 U.S. 500, 504-05 (2003); *Fountain*, 211 F.3d at 433-34. Further, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from that performance. *Massaro*, 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

An evidentiary hearing on a § 2255 habeas petition is required when the motion is accompanied by "a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions." *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976) (footnote omitted). "Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989). As will be seen, Wrolen's allegations are unsupported by the record; subsequently, the Court sees no reason to hold an evidentiary hearing regarding Wrolen's claims.

---

[1] In fact, a § 2255 motion cannot raise non-constitutional issues unraised on direct appeal regardless of cause and prejudice. *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

## II.     Wrolen Entered a Knowing, Voluntary, and Competent Guilty Plea

Wrolen first argues that he did not knowingly and voluntarily enter a guilty plea. Assuming *arguendo* that Wrolen's claims of ineffective assistance of appellate counsel demonstrate good cause for failing to appeal this constitutional issue,[2] Wrolen must still show actual prejudice from this failure to prosecute.  Put simply, this is something he cannot do, as the record shows that Wrolen entered a knowing, voluntary, and competent plea.

Before accepting Wrolen's guilty plea, the Court conducted a lengthy colloquy with Wrolen that contained the following relevant exchanges:

> THE COURT: This matter comes before this Court for a *change of plea*; is that correct?
>
> MR. NORWOOD: That was my understanding, Your Honor.
>
> MR. CAPPS: Yes, Your Honor.

*United States v. Wrolen*, Case No. 06-cr-40019-JPG (Doc. 672, p. 3) (S.D. Ill. Mar. 28, 2008) (emphasis added) (refuting Wrolen's position that he thought the change of plea hearing was a mere status conference).

> THE COURT: Okay.  Do you still want to go through with pleading guilty?
>
> THE WITNESS: *I want to do the open plea*.
>
> THE COURT: I know.
>
> THE WITNESS: Okay.  Yeah, open plea.  *I'm guilty*.

*Id*. at 16-17 (emphasis added).

> THE COURT: Any questions at all with regards to the nature of the charge

---

[2] As discussed *infra*, Wrolen's claims of ineffective assistance of trial and appellate counsel are without merit.  Thus, technically, he cannot even show good cause for failing to raise the voluntariness of his plea on appeal.

> against you, the [constitutional] rights I've explained to you, or the possible penalties?
>
> THE WITNESS: I understand.

*Id*. at 19-20.

> THE COURT: All right.  And knowing what the Court has told you regarding the sentencing range and what the Government's position is, [including its belief that Wrolen was subject to certain enhancements, including a firearm enhancement, that would increase the base offense level,] is it still your intent and desire to plead guilty?
>
> THE WITNESS: Can I ask [my attorney, Capps,] something else?
>
> THE COURT: Sure, anything you want.
>
> (A discussion was held off the record.)
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Again, do you wish to plead guilty?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Have any threats or promises been made to you in an effort to induce you to plead guilty?
>
> THE WITNESS: No.
>
> THE COURT: *So your intent to plead guilty is your own free and voluntary act*?
>
> THE WITNESS: *Yes, sir*.

*Id*. at 23. (emphasis added) (effectively countering Wrolen's contention that he was not informed of a two-level firearm enhancement sought by the Government and ultimately allowed by the Court).

> THE COURT: At this time, I'm going to ask you how you plead to the allegation in the superseding indictment that you knowingly, intentionally combined, conspired, and agreed to – with others to knowingly and intentionally manufacture, distribute, and possess with intent to distribute a mixture and substance containing methamphetamine as alleged in the indictment guilty or not

guilty?

THE WITNESS: *Guilty*.

THE COURT: Have any threats or promises been made to you in an effort to induce you to plead guilty:

THE WITNESS: No.

THE COURT: *Are you doing so of your own free and voluntary act?*

THE WITNESS: *Yes, sir.*

THE COURT: The Court finds that a factual basis exists and that *the defendant has knowingly and voluntarily and competently pled guilty to the superseding indictment and the court hereby judges the defendant guilty of that offense*. . . . .

*Id*. at 27 (emphasis added).

THE COURT: [Your current medications do not] affect your mental capabilities then?

THE WITNESS: Not unless I get too tired.

THE COURT: Are you tired now?

THE WITNESS: *No, I'm all right right now.*

THE COURT: Okay. All right. The Court is satisfied [that Wrolen knowingly, voluntarily, and competently pled guilty]. That will be all.

*Id*. at 31-32 (emphasis added). Wrolen's claim of an involuntary plea is clearly belied by the record, especially when one considers that "a plea of guilty is a 'grave and solemn act.'" *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004) (citing *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986)). Like every defendant that appears before this Court and enters a guilty plea,[3] the Court ensured that Wrolen understood the nature of the change of plea hearing,

---

[3]In fact, due to Wrolen's legal questions regarding the extent of a criminal conspiracy and his mention that he was on medications, Wrolen's change of plea necessitated more questions and greater assurance by the Court than most.

advised him of the constitutional rights that he was giving up, informed him of the mandatory minimum sentence that applied and advisory sentencing guidelines that could apply in his case, and made certain that his guilty plea was the product of a knowing, voluntary, and competent mind.

Because Wrolen's contention that he entered an involuntary plea is without merit, he cannot show actual prejudice in failing to raise the argument on appeal. Thus, it will not serve to sustain his § 2255 motion.

### III. The Court Properly Calculated Wrolen's U.S.S.G. Range

Next, Wrolen contends that the Court miscalculated his sentencing range by improperly categorizing him as a career offender.

In failing to raise this issue on direct appeal, Wrolen likely cannot package this argument with his § 2255 motion. *See United States v. Wisch*, 275 F.3d 620, 625 (7th Cir. 2001) ("Allegations that the district judge misapplied the sentencing guidelines are not reviewable under § 2255."); *see also Scott v. United States*, 997 F.2d 340, 342-43 (7th Cir. 1993). However, even if the Court were to hear this argument by Wrolen, it rests on a misassumption of fact because the Court never made a finding as to his career offender status. It was the § 851 enhancement, not some hypothetical career offender label, that ensured Wrolen's sentence carried a 20-year mandatory minimum.[4] 21 U.S.C. § 841(b)(1)(A)(viii) (2006). At sentencing, the Court acknowledged this mandatory minimum and found Wrolen's advisory guideline range to be 240-293 months imprisonment. Handing down 252 months, the Court sentenced Wrolen

---

[4]Because Wrolen's involvement in the conspiracy continued after the conviction of his state court felony became final (December 7, 2004), the § 851 enhancement was properly invoked and applied. *See United States v. Alden*, 527 F.3d 653, 663-64 (7th Cir. 2008).

on the lower end of that range, thereby negating any collateral attack on the calculation thereof.

## IV. Wrolen Did Not Suffer from Ineffective Assistance of Counsel

Finally, Wrolen argues that he was unlawfully subjected to ineffective assistance of trial and appellate counsel. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court must not become a "Monday

morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong *Strickland*, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

Here, Wrolen puts forth a number of arguments that allegedly demonstrate ineffective assistance of counsel on the part of Capps and Stenger. Although the supposed involuntariness of Wrolen's plea is a central component of his ineffective assistance claims, this argument has already been disproven for reasons discussed *supra* and will not be taken up again. Each of Wrolen's other primary arguments concerning ineffective assistance will be addressed in kind.

### A. Failure to File a Motion to Withdraw the Guilty Plea

First, Wrolen argues that, despite numerous requests, his counsel failed to file a motion to withdraw his guilty plea. A defendant may withdraw a guilty plea after accepted by the court if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). If a proper Rule 11 colloquy took place, as occurred at the time of Wrolen's plea, the "Rule 11(d)(2)(B) escape hatch is narrow." *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010). Typically, this hatch is only open in the event of an involuntary and unknowing plea, actual innocence, or legal innocence. *Id*. As the Court found Wrolen's plea to be voluntary and a showing has not been made as to his actual or legal innocence, Stenger's decision against filing a motion to withdraw the plea does not equate to ineffective assistance.

### B. Failure to Challenge the Firearm Enhancement

Wrolen also asserts that counsel failed to effectively challenge the two-level firearm

enhancement.  Wrolen apparently had at least one alibi witness that would have cast doubt on said enhancement.  However, at sentencing, the following exchange took place:

> MR. STENGER: Yes, Your Honor. [Wrolen] wishes to withdraw [his objection to the firearm enhancement], and it's my understanding that the government is then going to withdraw its objection to the aggravating role, and we have agreed that a two-level upward adjustment should apply under 3B1.1 instead of the four-level upward adjustment.
>
> THE COURT: Okay, Mr. Wrolen, is that accurate?
>
> THE [WITNESS]: Yes, sir.
>
> THE COURT: Have you discussed the withdrawing of your objection to the gun enhancement with your counsel?
>
> THE [WITNESS]: Yes, sir.
>
> THE COURT: And *are you doing so knowingly, voluntarily, and competently*?
>
> THE [WITNESS]: *Yes, sir*.

*United States v. Wrolen*, Case No. 06-cr-40019-JPG (Doc. 670, p. 4) (S.D. Ill. Mar. 28, 2008) (emphasis added).  This excerpt from the sentencing transcript shows not only did Wrolen personally waive his objection to the gun enhancement but there was adequate consideration for him doing so.  This alone is sufficient to defeat Wrolen's argument on the issue.  But, as the Government rightfully points out, there are several other reasons why this argument is without merit.  These include separate incidents chronicled in the Presentence Investigation Report (hereinafter "PSR"), *id*. (Doc. 660) (Feb. 29, 2008), that involve Wrolen and firearms, as well as Wrolen's failure to attach an affidavit discussing his supposed witness's testimony.[5]  Put simply,

---

[5]When a § 2255 petitioner faults his attorney for failing to object and present evidence at trial or at sentencing, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003).  With respect

in arguing his counsels' failure to challenge the firearm enhancement, Wrolen cannot meet either prong of the *Strickland* test.

### C.   Failure to Make Certain Arguments at Sentencing and on Appeal

Wrolen's petition cites a number of issues and arguments that *should* have been raised at sentencing and on appeal that purportedly represent ineffective assistance of counsel. These include, *inter alia*, diminished capacity, Stenger's failure to challenge the PSR on grounds other than the firearm enhancement,[6] and post-conviction rehabilitation. However, all of these arguments ignore the same basic premise upon which the Court sentenced Wrolen — the § 851 enhancement that brought with it a 20-year mandatory minimum term of imprisonment. If sentenced at the high end of his advisory guideline range, Wrolen could have expected up to 293 months in prison. Despite this daunting possibility, Stenger asked for a sentence at the low end of the applicable guideline range, citing Wrolen's age and extraordinary family circumstances. The Court largely indulged this request and gave Wrolen only one year above the mandatory minimum. Contrary to Wrolen's arguments, his counsel served him well. Wrolen will be

---

to omissions, "[a] defendant has the burden of supplying sufficiently precise information regarding the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information . . . would have produced a different result." *United States v. Farr*, 297 F.3d 651, 658-59 (7th Cir. 2002) (quotations and citation omitted). The Seventh Circuit has specifically held that, "[i]n the case of an uncalled witness, . . . the petitioner *must submit an affidavit* from the uncalled witness stating the testimony he or she would have given had they been called at trial." *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997) (emphasis added) (involving a habeas corpus petition brought under 28 U.S.C. § 2254).

In the case at bar, *Wright*'s affidavit requirement effectively precludes Wrolen from arguing that Stenger was ineffective by not investigating and calling witnesses for sentencing.

[6]It bears mentioning that, at disposition, Wrolen explicitly stated he had no objections to the PSR.

serving 12 months in prison beyond the mandatory minimum not because of ineffective assistance of counsel but because of aggravating evidence presented by the Government and the Court's full consideration of the factors enumerated at 18 U.S.C. § 3553(a).

### D.   Failure to File a Writ of Certiorari

In a habeas petition that included everything but the proverbial kitchen sink, Wrolen makes the final argument that Stenger was ineffective in failing to file a writ of certiorari with the United States Supreme Court.  "[This] argument is a non-starter . . . [because] a criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari." *Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009) (relying upon *Ross v. Moffitt*, 417 U.S. 600, 617 (1974)).  Of course, *Wyatt* dictates Wrolen's claim of ineffective assistance must fail on this ground as well.

Having reviewed the arguments and decisions that Wrolen wishes his counsel had made and those that were actually made, the Court finds that the representation of Capps and Stenger did not fall below objective standards of reasonableness.  Even if their representation was inadequate, Wrolen was not prejudiced as a result.  For these reasons, Wrolen's claims of ineffective assistance do not require vacatur or amendment of his sentence.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Wrolen's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) pursuant to 28 U.S.C. § 2255.  The Court **DISMISSES** this matter **with prejudice** and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: July 27, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
